IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BOBBY L. CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12-CV-745-NJR-CJP |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Bobby L. Carter filed this action on June 27, 2012, seeking review of a final decision by the Commissioner of Social Security, which denied his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") (Doc. 2). United States Magistrate Judge Clifford J. Proud issued a Report and Recommendation on February 13, 2014, in which he recommended that this Court affirm the Commissioner's decision to deny Carter's application for benefits (Doc. 31). Carter filed a timely objection to the Report and Recommendation, and the Commissioner filed a response (Doc. 32; Doc. 33). In accordance with Federal Rule of Civil Procedure 72(b), this matter is currently before the Court for a *de novo* review of the portions of the Report and Recommendation to which Carter specifically objected.

In conducting the *de novo* review, the Court "is not required to conduct another

hearing." *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). The Court need only "give fresh consideration to those issues to which specific objections have been made." *See, e.g., Smith v. Schwartz*, Case No. 10-cv-721, 2012 WL 1555116, at *1 (S.D. Ill. Apr. 30, 2012) (citing 12 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2 (2d ed. 1987 & Supp.2011)). The Court has the discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *Goffman*, 59 F.3d at 671. For the reasons set forth below, Carter's objection to Magistrate Judge Proud's Report and Recommendation is overruled, and the Court adopts the Report and Recommendation in its entirety.

## PROCEDURAL BACKGROUND & CARTER'S OBJECTION

Bobby Carter applied for benefits in January 2009, alleging disability beginning on May 7, 2004. Carter's application was denied initially and upon reconsideration by the Social Security Administration. Carter then requested a hearing before an administrative law judge ("ALJ"). After holding an evidentiary hearing, ALJ Gary L. Vanderhoof denied Carter's application for benefits in a decision dated November 19, 2010 (Tr. 26-33). ALJ Vanderhoof determined that Carter had the severe impairments of chronic obstructive pulmonary disease (COPD), degenerative disc disease, and history of carcinoma of the larynx (Tr. 29). However, none of Carter's impairments met or equaled a listed impairment, and Carter retained the residual functional capacity to perform a wide range of work at the light exertional level (Tr. 30). Based on the testimony of a vocational expert, ALJ Vanderhoof determined that Carter was able to do

his past work as an assistant manager of a service station, and therefore, Carter was not disabled (Tr. 32–33).

The Appeals Council denied Carter's request to review ALJ Vanderhoof's adverse decision, and that decision became the final agency decision subject to judicial review (Tr. 5–10). Carter filed a complaint in this Court seeking judicial review of ALJ Vanderhoof's decision (Doc. 2). On judicial review, Carter raised three issues: (1) whether the ALJ properly weighed the opinion of Carter's treating physician; (2) whether the ALJ erred in his assessment of Carter's credibility; and (3) whether the ALJ failed to properly consider the limitations caused by Carter's mental impairments (Doc. 22, p.2). After reviewing the entire administrative record, as well as the briefs from both parties, Magistrate Judge Proud issued his Report and Recommendation and rejected each of Carter's arguments. Magistrate Judge Proud recommended that this Court affirm the Commissioner's decision to deny Carter's application for benefits (Doc. 31). Carter objects to only one portion of the Report and Recommendation: Magistrate Judge Proud's finding that the ALJ did not err in weighing the treating physician's opinion (Doc. 32).

## FACTUAL BACKGROUND

Because Bobby Carter did not object to the factual background as recited by Magistrate Judge Proud in the Report and Recommendation, the Court will not repeat the facts in full. The Court will limit its recitation of the facts to those involving the treating physician's opinion, which are the only facts relevant to this Order.

Bobby Carter was born in July 1959; he was almost 45 years old on the alleged

date of onset—May 7, 2004. The parties do not dispute that Bob Thompson, M.D., a family practitioner from Frankfort, Illinois, is Carter's treating physician. Carter began seeing Dr. Thompson in June 2003, and he continued seeing him over the years for a number of ailments, including right hip pain, back pain and muscle spasms, right shoulder pain, weak knees, COPD, chronic bronchitis, head colds, right arm pain, anxiety, and a lump on his neck (Tr. 368, 371–77, 380, 383, 386, 387).

On July 30, 2009, Dr. Thompson completed a Medical Source Statement, in which he gave his opinion about Carter's ability to do work-related physical activities (Tr. 448–53). Dr. Thompson indicated that all of Carter's symptoms and limitations identified in the Medical Source Statement were present since 1997 (Tr. 453).

Dr. Thompson opined that Carter could occasionally lift and carry up to ten pounds (Tr. 448). Carter could sit, stand, and walk at one time without interruption for 30-45 minutes each, and he could sit for ninety minutes total and stand/walk for ninety minutes total in an eight hour work day (Tr. 448–49). The rest of the day Carter would spend resting in bed (Tr. 449). With respect to Carter's use of his hands, Dr. Thompson opined that Carter could only occasionally reach, handle, finger, and feel, but could never push or pull (Tr. 450). Dr. Thompson further opined that Carter could never operate foot controls; climb stairs, ramps, ladders, or scaffolds; or balance, stoop, kneel, crouch, or crawl (Tr. 450, 451).

Dr. Thompson said that his opinions were supported by one or more of the following: past MRIs showing degenerative disc disease in the cervical and lumbosacral spine and generalized osteoarthritis; severe body-back pain; xrays showing severe

COPD; severe shortness of breath; weakness; and history of pulmonary fibrosis, emphysema, and cancer of the larynx with local metastasis to the lymph nodes in Carter's neck; (Tr. 448, 449).

Dr. Thompson indicated that because of his impairments, Carter could not read ordinary or very small print or view a computer screen (Tr. 451). Carter also cannot determine the differences in shapes and color of small objects such as screws, nuts, or bolts (Tr. 451). Furthermore, Carter has environmental limitations and should never be exposed to unprotected heights, moving mechanical parts, humidity and wetness, pulmonary irritants, extreme cold or heat, or vibrations (Tr. 452).

Dr. Thompson indicated that Carter could shop so long as he did not lift over ten pounds (Tr. 453). Carter could also use public transportation, climb a few stairs at a reasonable pace, prepare a simple meal and feed himself, and care for his own personal hygiene (Tr. 453). He could ambulate without an assistive device, but could not walk a block at a reasonable pace on rough or uneven surfaces (Tr. 453). He also could not travel without a companion for assistance, and he could not sort, handle, or use paper (Tr. 453).

## DISCUSSION

### A. Legal Standard for Judicial Review

In the Report and Recommendation, Magistrate Judge Proud discussed and used the proper legal standard (Doc. 30, pp. 2–5). The Court will use the same legal standard in conducting a *de novo* review of the ALJ's evaluation of the treating physician's opinion.

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Thus, judicial review is limited to whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) ("On judicial review, a court will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence.") "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).  In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but the Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).  In addition to supporting the decision with substantial evidence, the ALJ must also include an adequate discussion of the issues and "build an accurate and logical bridge" from the evidence to each conclusion.  *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008).

**B.  Treating Physician's Opinion**

As previously stated, Carter's only objection to the Report and Recommendation involves Magistrate Judge Proud's finding that the ALJ did not err in weighing the treating physician's opinion.  A treating physician's opinion regarding the nature and severity of a medical condition is generally entitled to controlling weight; however, an ALJ can deny the opinion controlling weight if it is not supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with

substantial evidence in the record. *See, e.g., Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); 20 C.F.R. § 404. 1527(c)(2). "A decision to deny a physician's opinion controlling weight does not prevent the ALJ from considering it, however, and the ALJ may still look to the opinion after opting to afford it less evidentiary weight." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

In determining exactly how much weight to afford the opinion, the ALJ should look to the factors provided in the federal regulations. *Scott*, 647 F.3d at 740; 20 C.F.R. § 404.1527(c)(2). These factors include (1) whether the physician examined the claimant; (2) whether the physician treated the claimant, and the length, nature and extent of the treatment; (3) whether the physician's opinion is supported by sufficient explanations and objective medical evidence; (4) whether the physician's opinion is consistent with the record as a whole; (5) whether the physician is a specialist; and (6) any other factors brought to the ALJ's attention. *Scott*, 647 F.3d at 740 (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)); 20 C.F.R. § 404.1527(c). "If the ALJ discounts the physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulate[d]' his reasons—a very deferential standard that we have, in fact, deemed 'lax.'" *Elder*, 529 F.3d at 415 (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

Here, ALJ Vanderhoof considered the Medical Source Statement of Dr. Thompson and determined that it was not entitled to controlling weight because it was "inconsistent with the record as a whole," including the results of diagnostic testing and Dr. Thompson's treatment notes (Tr. 32). Carter does not argue that the ALJ erred in

declining to give controlling weight to Dr. Thompson's opinion (*See* Doc. 32). Instead, Carter argues that the ALJ erred by failing to apply the regulatory factors in deciding what weight to afford Dr. Thompson's opinion (Doc. 32).

As Carter acknowledged (Doc. 32, p.2), the ALJ was not required to undertake an in-depth analysis of each and every regulatory factor. *See Elder v. Astrue*, 529 F.3d 408, 415–16 (7th Cir. 2008) (affirming denial of benefits where ALJ discussed only two of the relevant regulatory factors); *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013) (holding ALJ "sufficiently accounted for the factors in 20 C.F.R. § 404.1527" because "his decision makes clear that he was aware of and considered many of the factors, including Dr. Belford's treatment relationship with Schreiber, the consistency of her opinion with the record as a whole, and the supportability of her opinion."); *Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012) ("The ALJ did not explicitly weigh every factor while discussing her decision to reject Dr. Preciado's reports, but she did note the lack of medical evidence supporting Dr. Preciado's opinion, and its inconsistency with the rest of the record. This is enough." (internal citations omitted)).

Carter claims, however, that the ALJ failed to discuss *any* of the factors in deciding how much weight to afford Dr. Thompson's opinion (Doc. 32, p.2). In particular, Carter argues that the ALJ failed to consider Dr. Thompson's examining and treatment relationship with Carter (Doc. 32, p.2). This argument relates to statutory factors one and two. Carter points out that Dr. Thompson treated him for a period of at least six years, examined him on multiple occasions, reviewed imaging studies, and prescribed medications over the years (Doc. 32, p.2). But Carter's argument is without

merit, because a review of the ALJ's decision reveals that he discussed precisely those things. ALJ Vanderhoof noted that Dr. Thompson was Carter's treating physician, and then spent four paragraphs discussing seven years of Dr. Thompson's treatment records, including Carter's complaints to Dr. Thompson during numerous examinations, the results of imaging studies and medical tests, and the medications Dr. Thompson prescribed to Carter (Tr. 31–32).

Carter also argues that Dr. Thompson's opinion was supported by objective medical evidence (Doc. 32, p.3). This argument relates to statutory factors three and four—the supportability of Dr. Thompson's opinion and its consistency with the record as a whole. Carter points to a nerve conduction study that showed neuropathy across his elbow and a pulmonary function test that showed he had a moderate obstruction (Doc. 32, pp.3, 4). He also points out that, on physical examination, Dr. Thompson found muscle spasms in Carter's neck and back, decreased breath sounds from wheezing, and moderate to severe osteoarthritis of the knees (Doc. 32, p. 4). Furthermore, Dr. Thompson diagnosed Carter with degenerative disc disease of both the lumbar and cervical spines based on past MRIs, osteoarthritis, COPD based on xrays, and emphysema (Doc. 32, p.4).

Again, Carter's argument is meritless because a review of the ALJ's decision reveals that he evaluated all of that evidence,[1] but determined that it did not actually

---

[1] The evidence cited by ALJ Vanderhoof does not appear in the portion of his decision entitled "Opinion Evidence" (*See* Tr. 32). Instead, it appears in previous portions of his decision. The Court has read the ALJ's decision as a whole in order to give it the most sensible reading. *Rice v. Barnhart,* 384 F.3d 363, 369 (7th Cir.2004); *Shramek v. Apfel,* 226 F.3d 809, 811 (7th Cir.2000).

support Dr. Thompson's opinion. Specifically, the ALJ found that there was a "lack of objective findings" supporting Dr. Thompson's opinion that Carter was "very limited" in his ability to do work-related activities (Tr. 32). After reviewing the record, the Court finds that this reason is sound and supported by ample evidence.

For example, Dr. Thompson asserted that his opinion was supported in part by past MRIs showing degenerative disc disease in the cervical and lumbosacral spine and osteoarthritis. However, those MRIs are not part of the administrative record; in fact, there are no imaging studies in the record that provide objective evidence of a spinal impairment. There's also little, if any, clinical evidence of a spinal impairment. The consultative examination on April 6, 2009, revealed that there was no anatomic deformity of any spinal segment and there was no limitation of motion in any spinal segment (Tr. 29, 426). Carter's ambulation was normal; he was able to walk 50 feet, get on and off the exam table without assistance, tandem walk, walk on heels and toes, hop, squat, arise from a chair without difficulty, and dress and undress (Tr. 29, 426). His straight leg test was normal in both the sitting and supine position (Tr. 29, 426).

Dr. Thompson also indicated that his opinion was supported in part by xrays showing severe COPD and Carter's severe shortness of breath. The ALJ noted that the only chest xray in the administrative record is from November 2009, and that xray revealed "no acute cardiopulmonary disease" (Tr. 32, 489). In fact, the lungs showed no evidence of pneumonia or edema, his heart was normal in size and configurations, and the pulmonary vasculature was not congested (Tr. 489). The ALJ also noted that Carter

had an echocardiogram on March 22, 2013, that was essentially normal (Tr. 29). That test was part of a cardiac evaluation completed by M.T. Joseph, M.D., a board certified internist and cardiologist (Tr. 502–04). As part of that same evaluation, Carter also underwent a nuclear stress test, which showed no evidence of reversible ischemia and an ejection fraction within normal range (Tr. 503). Dr. Joseph concluded that Carter's chest pains were not cardiac related, and he advised Carter to make some lifestyle modifications and to quit smoking (Tr. 504). The only objective evidence that Carter suffered from COPD was a pulmonary function test completed in January 2010 that showed Carter had moderate obstructive defect (Tr. 474). However, the test also showed "a significant response to bronchodilators and their clinical use [was] highly advised" (Tr. 474). Additionally, Carter's lung volumes and diffusion capacity were normal (Tr. 474).

Dr. Thompson also indicated that his opinion was supported in part by Carter's history of cancer of the larynx with local metastasis (Tr. 448). Carter was diagnosed with cancer of the larynx in 1999 and underwent a laryngectomy, but no radiation or chemotherapy (Tr. 28, 29).[2] Carter was concerned that his cancer had returned when he discovered a lump on his neck in 2008; however, the lump was removed, and a biopsy confirmed that it was a non-malignant neuroma (Tr. 467, 473, 488). Thus, there is no evidence that Carter's cancer ever recurred or metastasized.

In addition to the lack of objective findings, the ALJ also conclude that Dr.

---

[2] ALJ Vanderhoof noted that Carter "gave a history of having a laryngectomy in 1997 for carcinoma of the larynx" (Tr. 28). However, Carter's timeline appears to be a bit off. According to the medical records, he was diagnosed with cancer and underwent a laryngectomy in April 1999 (Tr. 365, 419–22).

Thompson's opinion was "not supported by the functioning levels noted in the treating notes" (Tr. 32). This reason directly relates to the fourth regulatory factor—the consistency of Dr. Thompson's opinion with the record as a whole. Again, after reviewing the record, the Court finds that this reason is sound and supported by ample evidence.

The essence of Dr. Thompson's Medical Source Statement is that Carter's impairments were so severe that he was practically bed-ridden for all but 90-minutes of an eight hour workday, and during the time that he was not in bed, he was largely unable to do most work-related activities. However, the ALJ cited to a number of instances where Dr. Thompson's treatment notes flatly contradict his assessment of Carter's abilities in his Medical Source Statement. For example, in April 2007, Carter told Dr. Thompson that he hurt his left shoulder picking up a heavy object (Tr. 381). He also reported that he had been working on the farm, feeling better, getting some strength back, and looking for a job (Tr. 31; Tr. 381). In June 2008, Carter reported to Dr. Thompson that his pain had increased because he had been "doing a lot of work around the farm at his mother's" (Tr. 31; Tr. 385). In October 2008, Carter reported that he has been "working on his house" (Tr. 31; Tr. 386). In December 2009, Carter complained of increased back pain which he attributed to working out on the farm and dealing with the cold weather (Tr. 32; Tr. 498).

The Court's own review of the records reveals several other instances where Dr. Thompson's treatment records contradict his assessment of Carter's abilities. In August 2005, Carter told Dr. Thompson that his back was bothering him because he had to do

more work since he father died, and he was keeping up rental properties owned by his mother (Tr. 376). In February 2006, Carter complained of back pain which he attributed to carrying and splitting firewood (Tr. 377). In May 2006, Carter told Dr. Thompson that his mother was in the hospital, and he was very tired and run down because he had been helping her (Tr. 378). He was also taking care of ten acres and installing sheetrock in a house that he was building (Tr. 378). In October 2006, Carter complained of increased back pain after he fell through the roof of the rental apartments while he was up there doing repairs (Tr. 380). He also reported that he was replacing tile and flooring (Tr. 380).

The type of activity that Carter reported to Dr. Thompson between 2005 and 2009—farming ten acres, building a house, maintaining rental properties—would wear on a perfectly healthy 45-year-old man. And it would be virtually impossible for a man who, since 1999, has not been able to lift over ten pounds, to stand or walk for more than ninety minutes a day, or to climb, stoop, kneel, or crouch. Dr. Thompson's July 2009 Medical Source Statement is plainly out of sync with his own treatment records.

In sum, the ALJ's decision makes clear that he was aware of and utilized a number of the factors in his analysis, including Dr. Thompson's treatment relationship with Carter, the supportability of his opinion, and the consistency of his opinion with the record as a whole. Therefore, he sufficiently accounted for the regulatory factors in evaluating Dr. Thompson's opinion. Furthermore, the ALJ's decision to discount Dr. Thompson's opinion is supported by substantial evidence and adequately articulated.

## CONCLUSION

Bobby Carter's objection to the Report and Recommendation is **OVERRULED**. The Court **ADOPTS** Magistrate Judge Proud's Report and Recommendation and **AFFIRMS** the final decision of the Commissioner of Social Security. The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

IT IS SO ORDERED.

DATED: September 29, 2014

s/ Nancy J. Rosenstengel
**NANCY J. ROSENSTENGEL**
**United States District Judge**
